IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
AARON ALEXANDER PETTY,           )
                                 )
              Plaintiff,         )
                                 )
     v.                          )      1:10-cv-573
                                 )
KEVIN LAWRENCE KRAUSE;           )
DAVIDSON COUNTY DETENTION        )
CENTER,                          )
                                 )
              Defendants.        )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Aaron Petty ("Petty"), proceeding pro se, alleges that as a state pretrial detainee he was assaulted, wrongfully placed in isolation, and denied proper medical treatment in violation of 42 U.S.C. § 1983. Before the court is the unopposed motion for summary judgment of Defendant Kevin Krause ("Krause") (Doc. 34) and Petty's "First Request for Production of Documents" (Doc. 31). For the reasons set forth below, to the extent Petty's discovery request could be construed to seek action by this court, it will be denied, and Krause's motion for summary judgment will be granted.

**I. BACKGROUND**

The undisputed facts, viewed in the light most favorable to Petty as the non-moving party, reveal the following:[1]

On December 22, 2008, Petty was awaiting trial in the Davidson County (North Carolina) Detention Center (the "DCDC") when he became involved in an altercation with an inmate. (Doc. 35-2 ¶ 1-2.) DCDC guards responded to the scene to break up the fight. (Id.) After arriving at the scene, one of the guards, Detention Officer Jonathan Crouse ("Crouse"), directed Petty and the other inmate to stop fighting; Petty ignored the command and threw another punch. (Id. ¶ 2.) Crouse aimed his taser at Petty and deployed it. (Id.) He then handcuffed Petty, placed him in a seated position on the ground, and ordered him to stay seated. (Id. ¶¶ 2, 3.)

Krause, a sergeant with DCDC, arrived as the situation was "still very chaotic." (Doc. 35-1 ¶ 2.) A nurse was summoned to

---

[1] Although Petty failed to respond to the motion for summary judgment, he could have relied upon a verified complaint. See Mesmer v. St. Mary's Cnty., Civ. A. No. DKC 10-1053, 2010 WL 4791884, at *9 n.8 (D. Md. Nov. 18, 2010). "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, an affidavit -- or its equivalent, a verified complaint -- is insufficient to oppose a motion for summary judgment unless it is sworn to be true or made under penalty of perjury. 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4). Here, Petty's complaint, while notarized, is neither sworn to be true nor signed under penalty of perjury. Thus, it is insufficient to oppose a motion for summary judgment, see Jones v. Vandevander, No. 7:09CV00055, 2009 WL 4709561, at *8 n.2 (W.D. Va. Dec. 8, 2009), and as a result, the only sources of verified facts in the record are the affidavits filed in support of Krause's motion to dismiss.

2

remove the taser probes. (Id. ¶ 4.) Petty was cursing at Krause and was "very agitated." (Id. ¶ 5; Doc. 35-2 ¶ 3.) Although Petty had been directed repeatedly to stay seated, he kept attempting to stand up, and Krause placed his hands and knee on Petty's back and shoulder to force him into a prone position. (Doc. 35-1 ¶ 5; Doc. 35-2 ¶ 3.) Krause did not believe that Petty was injured from his action at the time, nor did Petty complain of any injury at the time. (Doc. 35-1 ¶ 5; Doc. 35-2 ¶ 3.)

Petty was subsequently taken to the nurse to be treated for injuries arising from the altercation. (Doc. 35-1 ¶ 6; Doc. 35-2 ¶ 3; Doc. 35-3 ¶ 9; Doc. 35-3 at 13.) After treatment, he was placed in lockdown for nine days, in accordance with policy (Doc. 35-1 ¶¶ 7, 8; Doc. 35-2 ¶ 5.) He continued to receive medical treatment during that time. (Doc. 35-3 at 14-15.)

Petty first mentioned having back pain on January 6, 2009. (Id. at 4 ¶ 12; id. at 16.) He continued to request and see the medical team at DCDC for his pain. (Id. at 4-5 ¶¶ 13-18; id. at 16-23.) On January 23, 2009, he claimed for the first time that the pain was a result of the incident with Krause in December. (Id. at 4 ¶ 15; id. at 19.) Even after indicating that Krause had caused his injury, Petty made several requests for medical attention for his back pain, which was provided. (Id. at 5-6 ¶¶ 16-19; id. at 20-23.)

3

On July 22, 2010, Petty filed his complaint in this court. (Doc. 1.) Liberally construed, see White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (holding that pro se complaints are to be read liberally), it alleges violations of 42 U.S.C. § 1983, claiming that Krause used excessive force, subjected Petty to punishment via isolation in lockdown, and was deliberately indifferent to Petty's medical needs. The complaint also named DCDC as a Defendant, but claims against it have been dismissed, and the case proceeds against only Krause in his individual capacity.[2] (Doc. 25.) Krause filed an answer on May 11, 2011 (Doc. 24), and the case was placed on a standard pretrial discovery plan that required discovery to be completed by October 28, 2011 (Doc. 28).

On October 20, 2011 -- eight days before the close of discovery -- Petty served Krause with interrogatories and a request for production of documents. (See Doc. 33 at 3.) Five days later, Petty filed a First Request for Production of Documents with the court. (Doc. 31.)

Krause objects to the interrogatories and the request for production of documents as a violation of Local Rule 26.1(c) and

---

[2] Petitioner moved for an opportunity to amend his complaint to, among other things, clarify that he was suing Krause in his official and individual capacity. (Doc. 18.) The Magistrate Judge denied this request and, in doing so, noted that this foreclosed any claims against Krause in his official capacity and that all claims going forward would be against Krause in his individual capacity. (Doc. 21 at 7 n.2.)

4

contends that the filing of the request for production of documents violated Local Rule 26.1(b)(3). (Doc. 33 at 3-5.) Krause also moves for summary judgment. (Doc. 34.)[3] In accordance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court mailed Petty a letter informing him of his right to respond to the motion for summary judgment and the potential consequences of a failure to do so (Doc. 36); however, Petty has not responded to the motion.

**II. ANALYSIS**

   **A.  Petty's Discovery Requests**

   Petty served his interrogatories and request for production of documents on Krause eight days before the close of discovery, and he filed the latter document request with the court five days later. (Doc. 33 at 3.) Krause contends that the requests

---

[3] Krause, in his answer, has specifically denied that Petty has exhausted all of his administrative remedies under 42 U.S.C. § 1997e regarding this claim. (Doc. 24 at 2 ¶ 3; id. at 4.) Failure to exhaust administrative remedies under section 1997e is an affirmative defense rather than a jurisdictional bar to suit. See Jones v. Bock, 549 U.S. 199, 216 (2007) (finding that exhaustion of remedies is an affirmative defense); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("In its recent decision in Jones v. Bock . . . the Supreme Court decided that failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it." (internal citation omitted)). "Where . . . [the] movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense." Ray Commc'ns, Inc. v. Clear Channel Commcn's, Inc., 673 F.3d 294, 299 (4th Cir. 2012). Yet aside from denying that Petty has not exhausted all of his remedies, Krause has not taken any action to develop or support this assertion and in fact has not moved for summary judgment on this ground. As a result, the court need not reach the question of whether Petty has exhausted his administrative remedies.

5

were untimely and asks the court to deny the document request. (Doc. 33 at 4.) Petty has not responded.

Petty's discovery requests fail to comply with this court's local rules for discovery. The Magistrate Judge set discovery to close by October 28, 2011. Local Rule 26.1(c) provides that "[t]he requirement that discovery be completed within a specified time means that adequate provisions must be made for interrogatories . . . to be answered [and] for documents to be produced . . . within the discovery period." Under the Federal Rules of Civil Procedure, a party is allowed thirty days to respond to interrogatories and document requests, absent an order to the contrary. Fed. R. Civ. P. 33(b)(2), 34(b)(2). Here, Petty delayed in seeking discovery and did not serve his requests timely to allow Krause to respond within the court-ordered discovery period. Moreover, Petty never sought any extension of the discovery period, which he could have done. Local Rule 26.1(d). Krause was therefore under no obligation to respond to them.

Petty's filing of his document request with the court does not alter this result. Federal Rule of Civil Procedure 5(d) provides that "interrogatories [and] requests for documents," among other discovery-related documents, "must not be filed [with the court] until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d). The court has not

6

ordered that any discovery be filed. The document request also is not styled as a motion and does not appear to demand any action from the court. Even if it did demand court action, it would fail as being untimely, for the reasons previously noted.

As a result, Krause had no duty to respond to Petty's interrogatories and request for production of documents, and to the extent Petty's document request could be construed to seek action by this court, it will be denied.

    **B.**     **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). The moving party is "entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citation and internal quotation marks omitted). When evaluating a motion for summary judgment, the court must accept all of the nonmoving party's evidence as true, Hunt v. Cromartie, 526 U.S. 541, 552 (1999), and draw all reasonable inferences in favor of the non-moving party, Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). Ultimately, the court must

7

determine whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Petty has not responded to the motion for summary judgment. Although an uncontested motion generally may be subject to default, see Local Rule 7.3(k), motions for summary judgment must be evaluated to determine whether the moving party is entitled to summary judgment, even in the absence of opposition from the non-moving party, Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (holding that even if a motion is unopposed, it shall still be reviewed to determine whether the moving party has met its burden of establishing an entitlement to judgment as a matter of law). It is well settled, however, that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (alteration in original) (internal quotation marks omitted). Here, because Petty's complaint is not verified, the motion will be judged on the affidavits and facts Krause provided.

   1. **Excessive Force**

Petty's first claim is that Krause used excessive force by pinning him to the ground after the jailhouse altercation

8

between Petty and another inmate.[4]  (Doc. 1 at 3.)  Petty's complaint alleges that Krause assaulted him multiple times, jumped on him, and kneed him while he was restrained.  (Doc. 1 at 3.)

Excessive force claims raised by a pretrial detainee are governed by the Due Process clause of the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (citing Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004)).  In evaluating a claim of excessive force, "[t]he proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)), abrogated on other grounds by Wilkins v. Gaddy, --- U.S. ---, 130 S. Ct. 1175 (2010) (per curiam).  The court must also look to such factors as "'the need for the application of force[ and] the relationship between the need and the amount of force used.'"  Orem, 523 F.3d at 446 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Petty's complaint alleges that "Krause came over to [him] and assaulted [him]" while he was seated on the floor in

---

[4] A state law battery or assault claim would be subsumed by the excessive force claim. Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994).  Krause was charged with criminal assault for this incident and found not guilty.  (Doc. 24 at 2.)

9

handcuffs after the fight. (Doc. 1 at 3.) Krause's evidence, which is uncontradicted, however, states that he subdued Petty because Petty kept trying to stand as officers tried to neutralize the scene, failed to follow orders to stay seated, and posed a potential threat to the other inmates and officers. (Doc. 35-1 ¶ 5; see also Doc. 35-2 ¶ 3.)[5] Petty's failure to stay seated is why Krause was forced to use his hands and knees to place Petty in a prone position and prevent him from standing and potentially injuring others or himself. (Doc. 35-1 ¶ 5; Doc. 35-2 ¶ 3.) Krause restrained Petty in this position only until the housing unit was secure. (Doc. 35-1 ¶¶ 5, 9; Doc. 35-2 ¶ 3.)

On this record, there is no genuine dispute of material fact whether the force Krause applied was intended to "maliciously and sadistically . . . caus[e] harm." Orem, 523 F.3d at 446. Petty's refusal to stay seated following his altercation with another prisoner justified Krause's effort to restrain him to protect the officers, prisoners, and even Petty himself. Krause has stated a legitimate need for the force,

---

[5] While the nonmoving party's evidence is taken as true on a motion for summary judgment, the court may rely on undisputed papers and affidavits raised in the moving party's motion. See, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that the district court may rely on documents submitted by the moving party and that the court has no obligation to "examine the entire file for evidence establishing a genuine [dispute] of fact"). Here, neither Petty nor other evidence in the record contradicts Krause's statement that Petty was attempting to stand after he was ordered to stay seated.

which has not been shown to be excessive in light of the circumstances. Accordingly, Krause is entitled to summary judgment on Petty's excessive force claim.

**2. Isolation**

Petty's second claim is that he was punished by being placed in isolated lockdown in what he contends was an attempt to cover up Krause's alleged use of excessive force.

Under the Fourteenth Amendment a pretrial detainee who, by definition, has yet to be adjudged guilty of any crime, "may not be subjected to <u>any</u> form of punishment." Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 250 (4th Cir. 2005) (citation and internal quotation marks omitted). Still, the Government "may detain [a pretrial detainee] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536-37 (1979). Indeed, so long as "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id. at 539. A pretrial detainee challenging a condition or restriction of his detention must demonstrate that it was "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental

11

objective, in which case an intent to punish may be inferred." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988).

Petty claims that he was "placed in isolation to cover up what Sgt. Krause did." (Doc. 1 at 3.) Krause, on the other hand, states in his affidavit that Petty "was placed in a different housing unit and in Administrative Segregation per Office Policy" due to his participation in the jailhouse fight and his refusal to stay seated while guards attempted to restore order. (Doc. 35-1 ¶ 7.) DCDC's Policies and Procedures Manual -- provided by Robert Miller (Doc. 35-4 ¶ 2) -- further states that administrative segregation is allowed if an "[i]nmate poses a real or perceived threat of harm to other inmates or him/her self" (Doc. 35-1 at 6). According to Crouse, Petty was placed in administrative segregation in accordance with DCDC's policies. (Doc. 35-2 ¶ 5.) Finally, both Krause and Crouse state that Petty was deemed a threat to the safety of other inmates as well as staff and that this was the only reason he was placed in lockdown. (Doc. 35-1 ¶ 7; Doc. 35-2 ¶ 5.)

Simply placing a pretrial detainee in isolation, without more, does not amount to a constitutional violation. See West v. Schwebke, 333 F.3d 745, 748 (7th Cir. 2003) (explaining that where defendants "can establish that their use of seclusion [of a pretrial civil detainee] was justified on security grounds, they will prevail"). Courts have routinely held that jails have

12

a legitimate governmental objective in placing unruly detainees in isolation lockdown to "maintain[] institutional security, and preserv[e] internal order and discipline." Isley v. Oster, No. C09-1800-RAJ-BAT, 2011 WL 690577, at *5 (W.D. Wash. Jan. 12, 2011) (Tsuchida, Mag. J.) (citation and internal quotation marks omitted), adopted by 2011 WL 683893 (W.D. Wash. Feb. 16, 2011); Meeks v. Powers, No. Civ. A. No. 8:09-3279-MBS-BHH, 2010 WL 4340439, at *3 (D.S.C. Oct. 7, 2010) (Hendricks, Mag. J.) (recommending summary judgment in prison officials' favor where it was "not at all unreasonable to expect the officials . . . to wish to remove the Plaintiff from the general prison population when the possibility arose that he was involved in a recent assault on another inmate during the investigation of the incident"), adopted by 2010 WL 4780372 (D.S.C. Nov. 17, 2010). This is particularly true where a detainee has demonstrated "assaultive behavior." See LaBlanc v. San Bernardino Cnty. Bd. of Supervisors, No. CV 07-04361-TJH, 2010 WL 5559683, at *21-22 (C.D. Cal. Sept. 29, 2010) (Kenton, Mag. J.), adopted by 2011 WL 66105 (C.D. Cal. Jan. 5, 2011).

While Petty alleges that he was not the aggressor and was placed in isolation as a punishment, the evidence shows that he continued to throw a punch after officers arrived and in direct violation of commands to halt. Petty also offers no evidence demonstrating that DCDC's policy of placing individuals in

administrative segregation when they pose a danger to themselves or others -- or Krause's adherence to that policy under the circumstances of this case -- lacks a legitimate governmental interest. Further, Petty has identified no evidence that could permit a reasonable jury to conclude that Krause intended to punish him in administrative segregation. Accordingly, Krause's motion for summary judgment on the claim of punishment will be granted.

### 3. Deliberate Indifference

Petty's final claim is that Krause was deliberately indifferent to his medical needs.

The Due Process Clause of the Fourteenth Amendment requires governmental agencies to provide medical care to pretrial detainees. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244-45 (1983). To establish a violation of a constitutional right based on inadequate medical care, a pretrial detainee must show that the acts or omissions he complains of were sufficiently harmful so as to constitute deliberate indifference to the inmate's medical needs. See Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001). This "requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mount Rainer, 238 F.3d

14

567, 575-76 (4th Cir. 2001); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). Deliberate indifference can be manifested by prison guards who intentionally delay or deny medical treatment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

As Krause is the only Defendant remaining in the case, Petty must prove that Krause was deliberately indifferent to his need for medical treatment. Petty alleges that he "was . . . deprived the proper medical attention that [he] needed" and that "[d]ue to the force from the blows Sgt. Krause placed into [Petty's] back, [Petty] suffer[s] with constant pain daily." (Doc. 1 at 3-4.) This unsupported allegation does not square with the evidence of record.

Krause has submitted unrebutted evidence that DCDC's nursing staff treated Petty three separate times on December 22, 2008 -- the date of the fight. (Doc. 35-3 ¶ 9; id. at 13.) At no time during those visits did Petty complain of back pain.[6] (Id. ¶ 9; id. at 13.) In addition, at least on the record before the court, each of Petty's subsequent medical complaints were evaluated and treated by the facility's medical personnel.

---

[6] Even if Petty's claim relates to deliberate indifference to medical needs in general, and not just in reference to the back pain, it still fails because the record is replete with requests to see the medical team, which were repeatedly granted. (See, e.g., Doc. 35-3.)

15

(See id. ¶¶ 9-19.) When he eventually did complain of back pain on January 6, 2009 (id. ¶ 12; id. at 16), Petty did not attribute it to the incident with Krause; in fact, not until January 23, 2009 did Petty do so (id. ¶ 15; id. at 19). Even so, Petty continued to receive treatment for his medical needs. (See id. ¶¶ 16-19; id. at 20-23.)

Based on these undisputed facts, there is no genuine dispute of material fact related to Petty's claim that Krause was deliberately indifferent to his medical needs. First, Petty has not brought forward any facts indicating that Krause was even aware that Petty began to complain of injuries related to his back. See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (affirming the lower court's grant of summary judgment where "there was no objective evidence available to [defendant] at the time of the incident that [a detainee] had a serious need for medical care"). Second, even if knowledge of Petty's medical complaints could be imputed to Krause, there is ample evidence that DCDC officials evaluated Petty's medical condition and responded to his complaints on multiple occasions. Cf. City of Revere, 463 U.S. at 245 (explaining that governmental officials fulfilled their "constitutional obligation by seeing that [the injured detainee] was taken promptly to a hospital that provided the treatment necessary for his injury"). Third, Petty has identified no specific instance where he requested

medical care and was denied treatment. See Smith v. Powers, No. 6:05-2497-GRA-WMC, 2006 WL 1454760, at *5 (D.S.C. May 24, 2006) (granting summary judgment on plaintiff's deliberate indifference claim based on a detention facility withholding some of his medications where the plaintiff "failed to specify what medications were not received" and the record revealed that he consistently "received prompt medical attention"), aff'd, 207 F. App'x 270 (4th Cir. 2006) (per curiam) (unpublished).

Accordingly, Krause is entitled to judgment as a matter of law as to Petty's claim of deliberate indifference, and Krause's motion for summary judgment will be granted on this basis as well.

## III. CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Petty's First Request for Production of Documents (Doc. 31), to the extent it can be construed to seek relief from this court, is DENIED.

IT IS FURTHER ORDERED that Krause's motion for summary judgment (Doc. 34) is GRANTED.

A Judgment consistent with this Order will be entered contemporaneously.

/s/ Thomas D. Schroeder<br>United States District Judge

June 28, 2012